IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| UNITED STATES OF AMERICA, | CR 14-125-BLG-SPW-01 |
|---|---|
| Plaintiff, | |
| vs. | OPINION AND ORDER |
| RYAN ANTHONY CISLO, | |
| Defendant. | |

Defendant Ryan Anthony Cislo is charged with being a felon in possession of a firearm and possession of stolen firearms. He has moved to suppress the evidence that forms the basis of Counts I and II of the Indictment. (Doc. 42). The Court held evidentiary hearings on Cislo's motion on April 22, 2015, and May 15, 2015. The Court heard from Montana State Adult Probation and Parole Officers Steve Peek and John Frost, and Task Force Officer Steve Feuerstein. Having read and reviewed the parties' submissions and the applicable law, and having heard the testimony of the witnesses noted above, the Court DENIES Cislo's motion.

I.   **Background**

In March 2014, Ryan Cislo lived with his girlfriend, Lorinda Brown and her mother, Connie Johnson, on Rainier Street in Billings, Montana. Cislo and Brown shared a bedroom. Cislo, who was on state probation, reported the Rainier place as

1

his residence to his probation officer. He also kept his personal property and clothing there. Later that month, or early the next month, Cislo was arrested for violating his probation and went to jail. While he was in jail, Johnson purchased and moved into a mobile home on Attica Street North in Billings. Brown moved Cislo's clothing and personal effects to Johnson's Attica Street North residence.

After Cislo was released from jail on May 7, 2014, he lived with Brown at the mobile home on Attica Street North for all practical purposes. Although he did not pay rent and Johnson was not his landlord, he and Brown shared a bedroom, his clothing and personal effects were located there, and he had no other residence.

On June 8, 2014, Cislo showed Johnson three handguns and a rifle. He told her he was "happy" to be able to go out and shoot them. Scared, Johnson called the police the next day and asked them to search Cislo's belongings. The police refused to search the premises because neither Brown nor Cislo were present to consent and no search warrant had been issued.

At the police's suggestion, Johnson called Cislo's probation officer, Steven Peek of Montana State Probation and Parole. She told Peek that Cislo was in a relationship with her daughter, Brown, and had been living in Johnson's mobile home on Attica Street North since he was released from jail on May 7, 2014. Johnson told Peek that Cislo had recently shown her three handguns and a rifle and she was concerned that he was involved in drug activity. She also told Peek that

she had grown afraid of Cislo during the time he lived with her. She requested that Peek come to her residence and search Cislo's belongings for the guns.

Approximately 45 minutes later, Peek, and Adult Probation and Parole Officers John Frost, Brad Pinnick, and Joseph Dompier arrived at Johnson's mobile home on Attica Street North. Neither Cislo nor Brown was present. Johnson showed the officers to a bedroom in her mobile home. She told them that Cislo shared the room with Brown and had lived in it off and on for approximately 5 weeks. Johnson told Peek that she had kicked Cislo out of the house the previous night and he was not allowed to return.

During their search of the bedroom, the officers discovered two handguns, a Taurus .45 pistol and a Hi-Point 9 mm pistol, under the bed mattress. They also found Cislo's wallet. They contacted ATF Task Force Officer Stephen Feuerstein and requested that he come to the trailer and take possession of the guns. The officers continued to search the bedroom and found a Sentry handgun safe. When Officer Feuerstein arrived, he opened the safe and discovered a Derringer pocket pistol.

After collecting the firearms and ammunition, Officer Feuerstein spoke with Johnson. He wanted to reiterate that Johnson had observed Cislo with three firearms and obtain a statement about how she knew Cislo had the firearms and that the room was occupied by Cislo and Brown. She identified the three guns in

3

Feuerstein's possession as those that Cislo had shown her previously. She also confirmed that she had provided consent to the probation officers to search her home.

## II. Discussion

### 1. Cislo did not have a legitimate expectation of privacy in the bedroom.

Cislo contends the search of the bedroom violated the Fourth Amendment because he had a privacy interest in the bedroom and Johnson had no authority to consent to the search. In order to claim the protections of the Fourth Amendment, Cislo must establish that he had a reasonable expectation of privacy in the bedroom. *United States v. Davis*, 332 F. 3d 1163, 1167 (9th Cir.2003) (stating "[t]he Fourth Amendment protects people not places, so a defendant must first demonstrate that he had a legitimate expectation of privacy in the place searched or the thing seized. In the absence of such an expectation, the motion [to suppress] fails.") Cislo failed to meet this burden.[1]

The premise of Cislo's argument is that he was "more than an overnight guest" in Johnson's mobile home and thus he had a legitimate expectation of privacy in the bedroom. This premise is not supported by the evidence. Cislo stayed with Brown in Johnson's trailer for about five weeks after he got out of jail.

---

[1] The Court recognizes that the parties stipulated to Cislo's expectation of privacy in the bedroom, but the Court rejects that stipulation on the basis that it is a legal conclusion with which the Court disagrees.

There is no evidence he paid rent or was a tenant with Johnson as his landlord. Rather, the evidence is that he was merely an occupant or guest per Johnson's consent. That consent was revoked, however, when Johnson kicked Cislo out of her home the day before she requested Peek search the bedroom. At that point, Cislo no longer had permission to stay in the bedroom, so he no longer had a reasonable expectation of privacy there. *See United States v. Armenta*, 69 F.3d 304, 308 (9th Cir.1995) (noting that a defendant had the status of an overnight guest if he had permission, from an "identifiable host," to "come and go as he pleased"); *see also United States v. Oates*, 173 F.3d 651, 656 (8th Cir. 1999) (defendant did not have a reasonable expectation of privacy in the bedroom of his host's house from police invited in by his host and police had reasonable basis for concluding that resident of house had authority to consent to search of bedroom occupied by defendant where resident consented to the search, did not charge defendant rent, and defendant had refused to leave when she asked).

Cislo's privacy rights existed because he was staying at Johnson's home "with the permission of his host, who [was] willing to share [her] house and privacy with [her] guest." *Minnesota v. Olson*, 495 U.S. 91, 99. Like in *Oates*, when Johnson revoked her permission to share her house with Cislo the night before and kicked Cislo out, Cislo's expectation of privacy in the bedroom evaporated. That is, his situation "no longer suggested an "overnight guest" of the

sort envisioned by the Supreme Court in *Olson*, i.e. one who is in the owner's home "with the permission of his host." *Armenta*, 69 F.3d at 308 (quoting *Olson*, 495 U.S. at 98-99).

Because Cislo cannot establish a reasonable expectation of privacy in the bedroom, his motion to suppress must be denied. *See United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993) (the demonstration of a legitimate expectation of privacy "is a threshold standing requirement, and analysis cannot proceed further without its establishment.")

## III. Conclusion

For the reasons set forth above, Cislo's motion to suppress (doc. 42) is DENIED.

DATED this 4th day of June 2015.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge